NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOSE ANTONIO PEREZ, | : | |
| | : | Civil Action No. 16-4767 (MCA) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEVEN D'ILIO and | : | |
| THE ATTORNEY GENERAL OF THE | : | |
| STATE OF NEW JERSEY, | : | |
| | : | |
| Respondents. | : | |
| | : | |

**MADELINE COX ARLEO, District Judge**

### I.   INTRODUCTION

This matter has been opened to the Court by the pro se Petition pursuant to 28 U.S.C. § 2254 (ECF No. 1 ("Petition")) of Jose Antonio Perez ("Petitioner"). For the reasons explained below, the Court will deny the Petition with prejudice and will deny a certificate of appealability.

### II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

#### A. Factual Background

After extensive review of the sizeable record from which this case arises, and to give context to this Opinion, the Court will summarize briefly the facts pertinent to the analysis herein. In doing so, the Court relies upon the state courts'

fact recitations.[1] *See State v. Perez*, No. A-4031-12T1, 2014 WL 5431323, at *1 (N.J. Super. Ct. App. Div. Oct. 28, 2014); ECF No. 10-11 at 4.

Petitioner and nine co-defendants were members of a gang known as the Latin Kings. Co-defendant Michael Romero held a Latin Kings meeting at his Jersey City home on June 29, 1998. The prior day, a drive-by shooting at Romero's apartment complex had occurred, presumably in retaliation for a June 28, 1998 street fight. Romero believed he was the drive-by's intended target. He wanted Latin Kings to retaliate by kidnapping and killing those responsible. (ECF No. 10-7 at 10-11.) On June 29, Latin Kings gang members picked up Omar W. Morante ("Omar W."), Juan Cortes ("Cortes"), and Omar D. Morante ("Omar D."). (*Id.* at 11-12.) Jimmy Cabrera ("Cabrera") also attended the meeting at Romero's house. (*Id.* at 12.)[2]

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

[2] The Appellate Division's opinion during direct appeal does not specify whether Omar D., Omar W., Cabrera, and Cortes were members of Latin Kings or were members of a rival gang. The court's opinion (ECF No. 10-7 at 11-12) suggests they were a "special problem" to Latin Kings. This raises the possibility that they may have been members of Latin Kings, causing internal

After the meeting, David Martinez drove Edwin Rivera's Bronco, with Rivera, Miguel Torres, Juan Cortes ("Cortes"), and Omar W. Morante ("Omar W.") as passengers. Luis Manso drove his car, with Michael Romero, Omar D. Morante ("Omar D.") (Omar W.'s twin brother)), and Petitioner as passengers. Juan DeJesus drove Jesus Rodriguez's vehicle, with Jesus Rodriguez, Luis Rodriguez, Edwin Diaz, Jimmy Cabrera, and Sfand Rajabzaden as passengers. The group headed to Branch Brook Park in Newark. (*Id.* at 12-13.)

While they were stopped at a tollbooth, Omar W. received permission to leave the car to use the bathroom. Instead, he went to a nearby Turnpike office, asked someone to call the State Police, and escaped. Cortes was subsequently released. Co-defendants concluded it was too risky to kill Cortes because he had been seen by toll collectors with some of them during the stop. (*Id.* at 9, 15.) Omar D. and Cabrera were taken to Branch Brook Park, where they were strangled to death and left lying face down in the water. (*Id.* at 9.)

## B. **Procedural History**

Following the (1) kidnappings of Omar D., Omar W., Cortes, and Cabrera; and (2) murders of Omar W. and Cabrera, ten co-

---

strife to that organization -- such as the drive-by at Romero's apartment. Their precise gang affiliation is unclear from the record, but it is not dispositive of any of the issues in this Opinion. They were all targeted victims of the crimes giving rise to the instant matter, no matter their affiliation.

defendants were charged with: four counts of second-degree conspiracy to commit kidnapping; four counts of first-degree kidnapping; four counts of second-degree conspiracy to commit murder; two counts of murder; two counts of felony murder; and two counts of attempted murder. (ECF No. 10-11 at 4; *Perez*, 2014 WL 5431323, at \*1; ECF NO. 10-11 at 4; ECF No. 10-1.)

Six of the ten co-defendants pled guilty. *Perez*, 2014 WL 5431323, at \*1.

Petitioner and three others were tried before a jury between January 24 and March 17, 2000. (ECF Nos. 10-24 – 11-25.)

Petitioner was acquitted of: kidnapping of Cortes (count sixteen); murders of Cabrera and Omar D. (counts nine and five); and attempted murder of Omar W. and Cortes (counts fourteen and eighteen). Petitioner was convicted of: conspiracy to murder Omar D., Cabrera, Omar W., and Cortes (counts one, six, eleven, and fifteen, respectively); kidnapping of Omar D., Cabrera, and Omar W. (counts two, seven, and twelve, respectively); criminal restraint of Cortes (a lesser-included offense of count sixteen); second-degree conspiracy to murder Omar D., Cabrera, Omar W., and Cortes (counts three, eight, thirteen, and seventeen, respectively); murder of Omar D. (count four); and felony murders of Omar D. and Cabrera (counts five and ten). (ECF Nos. 10-11 at 5 and 10-2; ECF No. 10-1.)

Petitioner was sentenced on April 5, 2000. (ECF No. 11-26.)

He received: two consecutive forty-year sentences for the first-degree murder and felony murder convictions (counts four and ten), with an eighty-five percent period of parole ineligibility; two concurrent thirty-year sentences for kidnapping (counts two and twelve), eighty-five percent without ~~parole; and three concurrent twenty-year sentences for two~~ counts of conspiracy to murder and conspiracy to kidnap (counts thirteen, fifteen, and seventeen), with ten years of parole ineligibility on each. The remaining convictions merged. (*Ibid.*)

Romero, Manso, Rodriguez, and Petitioner filed notices of appeal on or about September 13, 2000. In a March 8, 2005 unreported decision, the Appellate Division affirmed Petitioner's conviction and remanded for resentencing with respect to application of the No Early Release Act ("NERA"), N.J. Stat. Ann. § 2C:43-7.2. (*Id.* at 7; ECF No. 10-7 at 95.) The New Jersey Supreme Court denied certification to the foursome on September 23, 2005. (ECF NO. 10-11 at 7.)

Petitioner filed his first PCR petition on April 3, 2006. (ECF Nos. 10-8, 10-9, and 10-10.) He raised the following issues: (1) ineffective assistance of counsel ("IAC") (ECF No. 10-8 at 8-11; ECF No. 10-10 at 8-11); (2) fair trial deprivation from the prosecutor's summation (ECF No. 10-8 at 12-13; ECF No. 10-10 at 12-13); (3) due process deprivation from trial court's failure to address juror's prayer meeting and expert testimony

skepticism (ECF No. 10-10 at 13-14); (4) excessive sentence (*id.* at 14-15); and (5) cumulative error (*id.* at 15). After evidentiary hearings (ECF Nos. 11-27, 11-28, 11-29, and 11-30), the Honorable Peter V. Ryan, J.S.C., in an order and lengthy written opinion dated January 7, 2013, denied the PCR petitions of co-defendants Romero, Manso, Rodriguez, and Petitioner. (ECF Nos. 10-11 and 10-12.)

On or about April 29, 2013, Petitioner filed a notice of appeal of PCR denial. (ECF No. 10-13.) He raised the following issues: (1) PCR denial should be reversed because trial counsel did not advise Petitioner of his right to testify; and (2) PCR denial violated Petitioner's right to effective assistance of counsel. *Perez*, 2014 WL 5431323, at *1. On October 28, 2014, the Appellate Division affirmed Judge Ryan in a written opinion. (*Ibid.*) On May 22, 2015, the New Jersey Supreme Court denied certification. *State v. Perez*, 115 A.2d 832 (N.J. 2015).

On December 9, 2015, Petitioner filed a second PCR petition. (ECF No. 10-18.) On July 18, 2016, the state court denied PCR. (*Ibid.*) Petitioner did not appeal the denial of his second PCR petition.

Petitioner executed his § 2254 petition on July 29, 2016. (ECF No. 1 at 20-21.) The Clerk's Office of this Court received and docketed it on August 4, 2016. (ECF 1.) He raises eight grounds for relief: (1) trial counsel error in denying

Petitioner's motion for a mistrial with respect to prosecutor's improper and prejudicial statements made to the jury during summation (ECF No. 1 at 7); (2) juror misunderstanding of reasonable doubt, requiring that Petitioner's sentence be vacated (id. at 8); (3) trial court error in failing to excuse a juror who "expressed feelings of fear and danger as a result of being followed by certain persons on a lunch break and because this was discussed with other jurors" (id. at 9); (4) trial court error in denying Petitioner's motion for acquittal at the conclusion of the State's case as to the kidnapping counts of the indictment (id. at 10); (5) Petitioner's conviction and sentence for felony murder should be vacated and dismissed (id. at 10-11); (6) erroneous and prejudicial jury instruction on felony murder based on failure to instruct on affirmative defenses (id. at 11); (7) trial court abuse of discretion in imposition of consecutive sentences for murder and felony murder (id. at 11); and (8) excessive sentence based on disparity between Petitioner's and co-defendants' sentences. (Id. at 12.)

On October 4, 2017, Respondents filed an answer (ECF No. 9), to which Petitioner filed a reply. (ECF No. 16.)

III. **STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court

only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S. 634, 641 (2003). District courts must afford great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where state courts have adjudicated a claim on the merits, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). *See Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015) (citing 28 U.S.C. § 2254(d)).

Federal law is "clearly established" for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

A decision is "contrary to" a Supreme Court holding within the meaning of § 2254(d)(1) if the state court "contradicts the

8

governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under § 2254(d)(1)'s "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. With regard to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Petitioners carry the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington*, 562 U.S. at 100. "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* at 102-03. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting

9

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).

## IV.    ANALYSIS

### A. Ground One: Prosecutor's Prejudicial Summation Comments

Ground One alleges that the trial court erred when it denied Petitioner's motion for a mistrial that he filed as to the prosecutor's supposedly improper and prejudicial summation comments. (ECF No. 1 at 7 ("Mistrial Claim").) The Mistrial Claim contends that the prosecutor: unfairly criticized defense counsel ("Counsel Criticism Comment"); and improperly referred to a witness's courage on the stand ("Witness Courage Comment").

*Counsel Criticism Comment*: In summation, the prosecutor referred to the summation claim by Romero's counsel that an investigator had coached defendant David Martinez to implicate defendant Charles Byrd by repeatedly referring to his chin and stroking it (an allusion to Byrd's nickname). (ECF No. 10-7 at 29; ECF No. 11-19 at 29.) The prosecutor pointed out that there was no evidence to support that theory, stating:

> Counsel yesterday took some liberties. I'm
> not saying they did it wrong, they're
> entitled to tell their version of the

10

evidence, but they said some things that
were not accurate. They're allowed to tell
you what they think the evidence is, but
what they think the evidence is doesn't
count. What counts is what the witnesses
said during that period.

They said several things. I wrote them down.
During that time, [Romero's counsel] said
Lonnie Melendez said the ... police officers
~~said, chin, can you help us, chin, my chinny~~
chin, chinny chin (demonstrating) -- it was
a wonderful story, it was amusing. It's not
part of the case. There's no evidence
anybody says that.

His job is to challenge the State's
evidence. His job is to get his client off,
but when he makes up something like that,
... somebody [in the jury room] has got to
say, time out, that's a statement of a
defense attorney. He's not doing anything
wrong, he's legally entitled to do that, but
that's not your tools.

(ECF No. 11-20 at 15-16.)

Defense counsel objected. (ECF No. 11-20 at 53-54.) The

Honorable Betty J. Lester, J.S.C. did not reject the defense's

objections outright. (Judge Lester agreed that the Counsel

Criticism Comment - *i.e.,* that defense counsel's job was "to get

his client off" -- was improper. (ECF No. 10-7 at 30, 32.)

However, the judge found that, in context, it was not so

egregious as to deprive any defendant of a fair trial. "The

prosecutor did not disparage defense counsel or attempt to

elevate his own position." (*Ibid.*) Nevertheless, she issued

these curative instructions:

Mr. Bogdanski commented it is also a defense
attorney's job to get his client off. This
is not accurate and should not be considered
by this jury. It is not the job of defense
counsel to get their clients off. In other
words, this remark was improper, it
represents a misstatement of the defense
attorney's position in the trial of a
criminal case ... His duty is to see to it
that the lawful rights and privileges of an
accused are not invaded and that he is not
convicted except on legal evidence and due
process of law. This is the role of defense
counsel.

The jury is, therefore, advised they are to
disregard that comment by Mr. Bogdanski. It
was an improper comment, and it should play
no role in your deliberations.

(ECF No. 11-20 at 53-54 and 58-60; ECF No. 11-21 at 4-17 and

37.)

*Witness Courage Comment*: During summation, the prosecutor

commented on the "courage and commitment to human life" that

Juan DeJesus showed when he took the witness stand:

For him to take the witness stand showed a
respect for human life, it showed courage.
He knows firsthand what those men over there
are capable of. He knows just what they can
do in the drop of a hat for Latin King
reasons. You can be taken out, but he had
the courage to come on that witness stand
and tell us what happened.

Did you hear any prior record about him?
Didn't hear any other bad acts about him. He
said, "I made a mistake" ...

He showed courage to come here. It's a
courage you'll have to show, you'll all have
to show at some point.

(ECF No. 11-20 at 38; ECF No. 10-7 at 29-30.)

After considering counsel's objection to the prosecutor's comment (ECF No. 11-20 at 53; ECF No. 11-21 at 5, 11-14, 15-16, 29, 35-36), Judge Lester found that there was no overreaching in the Witness Courage Comment -- *i.e.*, that it required courage for DeJesus to confront defendants and tell his story in court because he saw firsthand what happened to the victims and would naturally fear retribution. (ECF No. 10-7 at 31, 32-33.) The judge found the comment was "easily subject to the interpretation claimed by the prosecutor, which was that it referred to courage needed generally in life, and did not exhort the jury to have the courage to return a guilty verdict." (*Id.* at 31.) Since the comment was susceptible of more than one interpretation, it was not so egregious as to lead to a deprivation of the right to a fair trial, either by itself or in combination with other statements. (*Ibid.*)

While not outright rejecting defense counsel's objections to the Witness Criticism Comment, Judge Lester curatively instructed the jury that:

> [The Witness Courage Comment] is subject to
> more than one interpretation ... Being a
> juror ... is not a question of courage, it
> is a question of fairness, it is a question
> of calm deliberation, without passion,
> prejudice or sympathy ...  This is the
> function of the jury ... Courage has nothing
> to do with that. You are to disregard the

> [Witness Courage Comment] made by counsel
> during his summation."

(ECF No. 11-21 at 35-36.)

*Procedural History*: Petitioner raised the Mistrial Claim on direct appeal. (ECF No. 10-7 at 93.) The Appellate Division rejected it, relying on the court's rationale with respect to Romero's identical argument. (*Id*. at 27-35 and 95.) The Appellate Division found that Judge Lester's curative instructions as to the Counsel Criticism and Witness Courage Comments had been "detailed and complete" and had been given at an "appropriate time" at trial. (*Id*. at 27-28, 34 (agreeing with Judge Lester that the comments were "isolated and rendered harmless by curative instructions").)

Petitioner raised the Mistrial Claim in his first PCR petition. (ECF Nos. 10-8 at 12 and 10-10 at 12.) The Appellate Division declined to reach the argument, "as [it] w[as] raised or should have been raised on defendant's direct appeal, and no exception applies. R. 3:22-3; R. 3:22-5." Petitioner did not raise the Mistrial Claim during appeal of PCR denial. *Perez*, 2014 WL 5431323, at *1.

*Applicable Law*: The United States Supreme Court has held that prosecutorial misconduct is insufficient to overturn a conviction unless it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Greer*

14

*v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). It is not enough to show that a prosecutor's remarks were inappropriate or even deserving of universal condemnation. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To offend due process, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer*, 483 U.S. at 765 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976))). *See also Werts v. Vaughn*, 228 F.3d 178, 197-98 (3d Cir. 2000); *Ramseur v. Beyer*, 983 F.2d 1215, 1239 (3d Cir. 1992) (federal habeas review of a prosecutor's conduct in a state trial is limited to determining whether it "'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process'" (quoting *Greer*, 483 U.S. at 765)).

A reviewing court must "examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001) (internal citations omitted). As to prosecutorial remarks, they "must be sufficiently prejudicial in the context of the entire trial to violate due process rights." *Werts*, 228 F.3d at 198.

*The Mistrial Claim Lacks Merit*: This Court has reviewed the prosecutor's summation in its entirety and in the context of the evidence presented at trial. The Counsel Criticism and Witness Courage Comments did not rise to the level that would deprive Petitioner of a fair trial. The Appellate Division was objectively reasonable in ruling that these two comments were not egregious and that they did not deny Petitioner his right to a fair trial. New Jersey courts did not unreasonably apply clearly established federal law in rejecting Petitioner's challenges to the Counsel Criticism and Witness Courage Comments. The Counsel Criticism comment did not disparage defense counsel or attempt to elevate the prosecutor's position. The Witness Courage Comment reasonably could have referred to the courage required by "life generally" (*see* ECF No. 10-7 at 31), and not to that needed to return a guilty verdict.

This Court will deny relief on Ground One.

## B. Ground Two: Jury's Misunderstanding Of Reasonable Doubt

Ground Two seeks to vacate Petitioner's convictions because the jury supposedly did not understand the concept of reasonable doubt. (ECF No. 1 at 8 ("Reasonable Doubt Claim").)

*Reasonable Doubt Jury Charge At Trial*: Judge Lester charged the jury on reasonable doubt as follows, in pertinent part:

> [U]nless each and every essential element of
> an offense charged is proven beyond a

16

reasonable doubt, the defendant must be
found not guilty of that charge.

The burden of proving each element of a
charge beyond a reasonable doubt rests with
the State of New Jersey and that burden
never shifts. [I]t never becomes the
[defendant's] obligation to prove his
innocence, nor offer any proof relating to
his innocence ...

The Prosecution must prove its case by more
than a mere preponderance of the evidence,
yet not necessarily to absolute certainty...

In criminal cases, the State's proof must be
more powerful than ["more likely true than
not"], it must be beyond a reasonable doubt.

A reasonable doubt is an honest and
reasonable uncertainty as to the guilt of a
defendant after you have given a full and
impartial consideration to all of the
evidence in the case. A reasonable doubt may
arise from the evidence itself [or] from
lack of evidence ...

Proof beyond a reasonable doubt is proof
that leaves you firmly convinced of a
defendant's guilt. In this world we know
very few things with absolutely certainty in
criminal cases. The law does not require
proof beyond every possible doubt. If you
are convinced of guilt, you must find
[defendant] guilty. If not firmly convinced
of guilt, you must give him the benefit of
the doubt and find him not guilty.

(ECF No. 11-21 at 36-37.) Petitioner's counsel did not object to

the reasonable doubt charge. (ECF No. 11-21; ECF No. 1 at 8.)

During deliberations, the jury announced that it had

reached a unanimous verdict as to four co-defendants and asked

for a re-charge on reasonable doubt's definition. (ECF No. 11-25

at 22, 26, and 38.) Judge Lester re-read, in full, the model jury charge on reasonable doubt that she originally charged. (ECF No. 11-25 at 26, 32 and 38-39; ECF No. 10-7 at 63.)

*Direct appeal*: On direct appeal, co-defendants Manso and Perez asserted the Reasonable Doubt Claim. (ECF No. 10-7 at 63.) The Appellate Division rejected it, explaining as follows: "Judges have been directed not to deviate from the definition of reasonable doubt contained in the model jury charge. Moreover, judicial inquiry into the jurors' deliberative process is prohibited ... except [in situations of] extraneous ... [juror] influence[]." (ECF No. 10-7 at 63-64 (citing *State v. Medina*, 147 N.J. 43, 60-61 (1996), *cert. denied*, 520 U.S. 1190 (1997).)

This Court finds that that the Reasonable Doubt Claim does not merit habeas relief.

*Applicable Law*: Questions relating to jury charges are normally matters of state law and procedure, and they do not constitute claims for federal habeas review. *See Engle*, 456 U.S. at 107. It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Horn*, 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted), *cert. denied*, 522 U.S. 1109 (1998). *See also Engle v. Isaac*, 456 U.S.

107 (1982); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 309 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991); *Grecco v. O'Lone*, 661 F. Supp. 408, 412 (D.N.J. 1987). "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).

Consistent with this clearly established federal law, a habeas petitioner carries the burden when he or she attempts to demonstrate that an erroneous instruction so prejudiced a jury as to require a reviewing court to alter, vacate or set aside a sentence. That burden "is even greater than the showing required to establish plain error on appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977). Petitioners must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' *(Cupp v. Naughten,* 414 U.S. 141, 147 (1973), not merely whether the 'instruction is undesirable, erroneous, or even 'universally condemned.'" *Id.* A habeas petitioner must establish that supposed instructional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The error must have resulted in "actual prejudice." *Ibid.*

In instructing a jury at the conclusion of a criminal trial, a court must convey the burden of proof of reasonable

doubt. *United States v. Isaac,* 134 F.3d 199 (3d Cir. 1998). To determine whether a trial court has adequately conveyed the burden of proof to a jury, the reviewing court must consider the instructions as a whole. Due process is satisfied if the instructions as a whole accurately convey the concept of reasonable doubt. *Id.* Jury instructions violate due process only where they have "operated to lift the burden of proof on an essential element of an offense as defined by state law." *Smith*, 120 F.3d at 416. *See Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (a jury instruction suggesting that jury may convict without proving each element of crime beyond reasonable doubt violates constitutional rights); *In re Winship*, 397 U.S. 358, 364 (1970) (due process requires proof beyond reasonable doubt of each fact necessary to constitute the crime with which defendant is charged).

*The Reasonable Doubt Claim Lacks Merit*: After reviewing the entirety of the jury instructions from Petitioner's trial in context, this Court finds that they, as a whole, met the constitutional standards described *supra*. The reasonable doubt charge provided the jury with a full understanding of: the definition of reasonable doubt; and the fact that the State was required as a matter of law to prove its case under that standard. Specifically, the instructions: informed the jury that Petitioner was to be presumed innocent unless proven guilty

beyond a reasonable doubt; instructed the jury as to what could constitute reasonable doubt; and explained that reasonable doubt did not mean a finding of guilt beyond all possible doubt.

Significantly, Judge Lester's reasonable doubt instruction and re-charge were consistent with *State v. Medina*, 685 A.2d 1242 (N.J. 1996). The *Medina* decision "direct[s] trial courts not to deviate from the definition [of reasonable doubt] contained in this opinion." *Medina*, 685 A.2d at 1251-52. Judge Lester tracked precisely the language adopted in *Medina*. (ECF No. 11-25 at 26, 32 and 38-39; ECF No. 10-7 at 63; ECF No. 11-21 at 36-37.)

Petitioner argues that Judge Lester "had the duty and obligation to clarify" her original instruction when providing the re-charge (ECF No. 1 at 9), but he does not identify any United States Supreme Court precedent requiring such clarification. This Court identifies no such precedential authority, either. As commanded by the New Jersey Supreme Court, Judge Lester expressly followed *Medina*'s specific directive when charging and re-charging on reasonable doubt. These circumstances do not make for habeas relief.

Petitioner also contends "it must be assumed that the jury did not understand the initial [reasonable doubt] charge" because jurors "request[ed]" a re-charge. (ECF No. 1 at 9.) However, unsupported suppositions such as these do not satisfy

the constitutional standard for habeas relief on jury charge claims. Petitioner has not shown that the reasonable doubt instruction or re-charge were fundamentally unfair or that they violated due process. Moreover, he has not demonstrated that the jury, in fact, misunderstood *Medina*'s short and plain reasonable doubt charge as delivered by Judge Lester. Given that juries are presumed to follow courts' instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), this Court has no basis upon which to question the jury's process or comprehension here as to the concept of reasonable doubt. There is no principled basis for the Court to do so, considering: (1) Judge Lester's *Medina* compliance; and (2) the principle that it is not the province of federal habeas courts to intrude into and second-guess jurors' deliberative process. *See United States v. Fattah*, 914 F.3d 112, 147 (3d Cir. 2019) ("Once the jury retires to deliberate, the confidentiality of its deliberations must be closely guarded"); *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006) ("It is beyond question that the secrecy of deliberations is critical to the success of the jury system"). *See also Kyzar v. Ryan*, 780 F.3d 940 (9th Cir. 2015) (a federal habeas court may not second-guess the jury's credibility assessments); *Conley v. Warden of Chillcothe Corr. Inst.*, 505 F. App'x 501, 505 (6th Cir. 2012) ("on habeas review, the federal courts are in no position to second-jury th[e] [jury's] determination"); *Anderson v. Sternes*,

243 F.3d 1049, 1058 (7th Cir. 2001) ("it is not our job ... in this habeas action ... to second-guess the jury's assessment ..."). There are a myriad of reasons why any given jury could request a re-charge on any particular instruction. This Court will not accept Petitioner's invitation to read into the re-charge request here the "assumption" (ECF No. 1 at 8-9) that jurors were having difficulty comprehending the concept of reasonable doubt.

The Court denies relief as to the Reasonable Doubt Claim.

## C. **Ground Three: Juror Influence Claim**

Ground Three argues that Judge Lester should have excused juror number thirteen ("Juror Thirteen") because he "expressed feelings of fear and danger as a result of being followed by certain persons on a lunch break and because this was discussed with other jurors." (ECF No. 1 at 9 ("Juror Influence Claim").) Petitioner claims that Juror Thirteen told Judge Lester that "during the lunch hour [one day during trial], four people were following him. As he was crossing the street, these person[s] laughed and joked so as to intimidate him." (*Ibid.*) According to Petitioner, Juror Thirteen said that the individuals had not been back in the courtroom since the incident. However, according to Petitioner, Juror Thirteen reported being "afraid" and "uncomfortable" because "[h]e believed this conduct was to let him know that he was in danger." (*Ibid.*) Petitioner argues

that Juror Thirteen "should have been dismissed because his exposure had the capacity of influencing the result of the trial". (*Ibid.*) Petitioner contends that Judge Lester "should have voir dired the entire jury in order to determine whether other[s] may have been exposed to such an encounter or were made aware of [J]uror [T]hirteen['s.]" (*Ibid.*)

*The Record As To Supposed Influence On Juror Thirteen*: On February 18, 2000, Judge Lester announced that three jurors had told the sheriff's officer that someone from the audience had attempted to speak to them. The judge determined that she should question the jurors.

Juror fourteen reported that when she and juror eleven were leaving the courthouse the day before, someone who had been in the courtroom audience walked up behind them and asked: "What do you think?" She did not respond, and no more was said. Juror fourteen believed that this incident did not prevent her from remaining fair and impartial, since no further questions occurred. (ECF No. 10-7 at 22-23.)

Juror eleven confirmed this account, though she said she had responded: "I don't know nothing." She, too, believed the mere attempt to talk to her would not prevent her from being a fair juror. (*Id.* at 23.)

Juror Thirteen said that no one had attempted to speak to him about the case. He explained, though, that he had been

"followed by four people" who crossed the street each time he did. They "kind of laughed and joked as [if] to intimidate me. That's what the intention was." (*Id.* ("the Incident").) He believed that perhaps more juror security would be desirable, "only because I know that there was a tactic that was executed upon me when I was alone." (*Id.*) Juror Thirteen recognized the individuals from the Incident as having been present in the courtroom that morning. (*Id.* at 24.) He said he was afraid at the time. He thought it was a scare tactic, to let him know he was in danger. He added: "Let's put it this way. I don't like being out in that hall when we're waiting." (*Id.*) However, he vehemently denied that he had a level of discomfort that would prevent him being a fair and impartial juror. (*Id.* ("What's going on with the trial and what people are sitting here are two different things, and the people that are sitting here, I don't know who they are, what their allegiance is. I know nothing at all").) The judge asked: "Do you feel you can be a fair and impartial juror?" Juror Thirteen answered: "Absolutely." (*Id.*)

Judge Lester instructed all three jurors not to discuss the matter with the other jurors. (*Id.*) The judge: denied the defense's request to excuse Juror Thirteen; instructed the entire jury as to how to treat approaches from outsiders; and instituted additional measures to keeping jurors away from spectators. (*Id.*; ECF No. 11-8 at 105-06.)

*Direct appeal as to Juror Thirteen*: Defendants Rodriguez, Romero, and Perez raised the Juror Influence Claim on direct appeal. (ECF No. 10-7 at 22-25 and 94.) The Appellate Division rejected it. (*Id.* at 25.) The court acknowledged federal cases on Sixth Amendment law that "the accused has a constitutional right to a trial by an impartial jury," which "means that a defendant is entitled to a jury free of outside influences." (*Ibid.* (internal citations omitted).) Referring to state court cases on this principle, the Appellate Division noted that "[t]he test for determining whether irregular influences on jurors merit a new trial is whether it 'could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge.'" (*Ibid.* (internal citations omitted).)

Applying this law, the Appellate Division ruled that Judge Lester had "acted within her discretion" in denying the request to excuse Juror Thirteen. The court found that Petitioner and his co-defendants:

> [S]peculate[] that the juror was influenced
> by fear to find him guilty on all counts.
> However, influence cannot be inferred merely
> because that was the verdict. As juror
> thirteen made clear, he did not get any
> message which way the outsiders might have
> wanted to influence him, if at all, or, as
> he said, what their "allegiance was." The
> incident was without content, and was
> related to the trial only because he

26

> recognized the people as spectators. He was
> prompted to bring it to the attention of the
> judge only to support additional protective
> measures for the jury. [I]n this regard[,]
> no error "clearly capable of producing an
> unjust result" occurred in this context.

(ECF No. 10-7 at 27.) The New Jersey Supreme Court denied certification. State v. Perez, 859 A.2d 692 (N.J. 2004).

Applicable Law: The Sixth Amendment guarantees every criminal defendant "the right to a ... trial[] by an impartial jury." U.S. Const. amend. VI. Complementing this right are the protections afforded by the Fourteenth Amendment's Due Process Clause, which have "long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." Morgan v. Illinois, 504 U.S. 719, 727 (1992); Sheppard v. Maxwell, 384 U.S. 333, 362 (1966) (the Fourteenth Amendment guarantees each criminal defendant the right to a trial by an impartial jury free of outside influences). Accord State v. Williams, 459 A.2d 641 (N.J. 1983) ("it has long been recognized under the federal Constitution that a defendant is entitled to a jury that is free of outside influences and will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself").

The federal precedents governing when a third party's contact with a jury violates a criminal defendant's right to an impartial jury are *Remmer v. United States,* 347 U.S. 227 (1954) ("*Remmer I*"), *Remmer v. United States*, 350 U.S. 377 (1956) ("*Remmer II*"), and *Smith v. Phillips,* 455 U.S. 209 (1982).

If allegations of jury bias involve a third party's contact with a juror during a trial about the matter pending before the jury, the contact is deemed presumptively prejudicial to the defendant. *Remmer I,* 347 U.S. at 229; *United States v. Vega*, 285 F.3d 256, 266 (3d Cir. 2002).[3] However, this presumption of prejudice is not conclusive. *Vega*, 285 F.3d at 266 (citing *Remmer I*, 347 U.S. at 229). The trial court must conduct a hearing to "determine the circumstances, the impact thereof upon the juror, and whether or not [the contact] was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer I*, 347 U.S. at 230. The government has the burden of rebutting the presumption by showing that the "contact with the juror was harmless to the defendant." *Id.* at 229-30; *see also Vega*, 285 F.3d at 266 (government must prove that the improper

---

[3] "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is ... deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." *Vega*, 285 F.3d at 266 (quoting *Remmer I*, 347 U.S. at 229).

communication did not and will not prejudice the defendant). "If [the incident] is found to be harmful," the trial court should grant a new trial. *Remmer I*, 347 U.S. at 229-30.

*Remmer I*'s rebuttable presumption only applies in cases involving a "direct communication [about the matter pending before the jury] between a juror and a third party during deliberations." *United States v. Lloyd*, 269 F.3d 228, 238-39 (3d Cir. 2001) ("This court has applied the presumption of prejudice only when the extraneous information is of a considerably serious nature. In particular, we have tended to apply the presumption of prejudice when a juror is directly contacted by third-parties") (citing *United States v. Console*, 13 F.3d 641, 666 (3d Cir. 1993) (discussing circumstances warranting application of *Remmer* I's presumption of prejudice and those situations warranting *Smith*'s actual prejudice analysis)). *Accord Vega*, 285 F.3d at 266 (citing *Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993) and *Console*, 13 F.3d at 667). A new trial will only be warranted if defendant proves that he was actually prejudiced by the improper contact. *Smith,* 455 U.S. at 215, 217-18.

In short, once a defendant makes jury partiality allegations, a hearing must occur to determine the effect any improper jury contact had on defendant's trial. *See Smith,* 455 U.S. at 215. The government must prove that the contact was

29

harmless in order to avoid a re-trial; and when *Smith* applies, the defendant must prove that he was actually prejudiced by the contact in order to get a re-trial.

*The Juror Influence Claim Is Without Merit*: The Appellate Division's ruling -- that Judge Lester did not abuse her discretion in addressing the juror contact issue (ECF No. 10-7 at 95) -- was not contrary to or an unreasonable application of federal precedent for at least two reasons.

First, the Incident did not convey any communication to Juror Thirteen about Petitioner's case. That is, as the Appellate Division correctly noted, there was no influence in the first instance. Juror Thirteen "did not get any message" from the individuals on the street. (ECF No. 10-7 at 27.) The individuals who followed him only "kind of laughed and joked as [if] to intimidate" him. (*Id.* at 23.) Juror Thirteen "made clear [that] he did not get any message which way the outsiders might have wanted to influence him, if at all." (*Id.*) Rather, Juror Thirteen harbored only a belief about the Incident as a scare tactic. (*Id.* at 24.) He expressly said he knew "nothing at all" (*ibid.*) about who the individuals were in relation to the trial.[4]

---

[4] Under 28 U.S.C. § 2254(d), the state court findings of fact are presumed to be correct; and Petitioner has failed to rebut that presumption. Further, under § 2254(d) state court conclusions of law are binding on a federal habeas court unless contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

As the Appellate Division concluded, "[t]he [I]ncident was without content." (*Id.*) Petitioner has not shown there was contact with Juror Thirteen about a matter pending before the jury. Therefore, federal precedent does not mandate a presumption of prejudice with respect to the Juror Influence Claim. The state courts' rulings were not contrary to and did not unreasonably apply United States Supreme Court precedent.

Second, even assuming *arguendo* that the two individuals' trail of Juror Thirteen on the street (ECF No. 10-7 at 22-23) constituted direct contact with him that triggered *Remmer I*'s rebuttable presumption of prejudice, that would not change the outcome here. The state court objectively and reasonably could have determined that the probable effect of the two individuals' non-verbal pursuit did not prejudice Petitioner's case. Indeed, "the presumption of prejudice is effectively rebutted by a juror's credible profession of impartiality." *United States v. Smith*, 319 F. Supp.2d 527, 533 (E.D. Pa. 2004). *See also United States v. Berry*, 132 F. App'x 957, 965 (3d Cir. 2005). Juror Thirteen made precisely such a profession to the trial judge here. (ECF 10-2 at 23-24.) Juror Thirteen did not indicate anything that would prevent him from being fair and impartial, or that the Incident would affect his vote. Rather, he affirmatively stated that he could remain impartial. (ECF 10-2 at 23-24.)

Furthermore, there was sufficient evidence apart from his own subjective assessment to support the trial court's conclusion on the impact of the Incident. For example, Juror Thirteen did not find the Incident significant enough to mention to anyone until another juror said she had been approached. (ECF No. 10-7 at 23.) This suggests that his level of fear was mild and that his profession of impartiality was credible. Having the benefit of observing his credibility, Judge Lester concluded that there had been no unconstitutional outside influences and that similar concerns going forward could be addressed by additional safety measures.

Petitioner points to nothing in the record demonstrating otherwise. Petitioner offered the state courts no showing that Juror Thirteen voted in favor of conviction because of the Incident. Petitioner presented nothing showing actual prejudice to him. Rather, as the Appellate Division similarly noted of the record before it, Petitioner bases the Juror Influence Claim on mere "speculat[ion] that the juror was influenced by fear to find him guilty on all counts." (ECF No. 10-7 at 27.) Yet, juror influence "cannot be inferred" (*id.*) -- nor can unconstitutional actual prejudice.

For these reasons, the state court's decision was consistent with relevant federal precedent under either scenario. *See Lloyd*, 269 F.3d at 238-39; *Console*, 13 F.3d at

666. That is: (1) The state court reasonably could have determined that there was no considerably serious third-party direct contact with Juror Thirteen so as to warrant *Remmer I*'s rebuttable presumption; and, alternatively, (2) the record shows that, even if direct contact occurred and triggered *Remmer I*'s presumption, it was harmless because Juror Thirteen remained impartial.

Ground Three will be denied.

### D. **Ground Four: Petitioner's Motion For Acquittal At Trial**

Ground Four argues that Petitioner's motion for acquittal as to the indictment's kidnapping counts should have been granted. (ECF No. 1 at 10 ("Acquittal Motion Claim").) Ground Four describes "[t]he underlying crimes in this matter" as the attempted murder of Omar W. and Cortes, and the murders of Omar D. and Cabrera. (*Ibid.*) In support of Ground Four, Petitioner argues that "[t]he confinement of these persons was merely incidental to the ultimate crimes that were committed ... The harm to the[m] was not enhanced as a result of their confinement." (*Ibid.*) He argues that, "[f]or these reasons," his kidnapping conviction should be vacated. (*Ibid.*)

*Trial Record*: At trial, all defendants moved for acquittal as to kidnapping. Judge Lester denied the motions, finding the State had sustained its burden to show a prima facie case. (ECF No. 1 at 10.) The judge determined that the kidnapping began not

33

when the victims were picked up in cars but rather at the gang meeting at Romero's home. (ECF No. 10-7 at 64.)

*Direct Appeal*: Petitioner raised the Acquittal Motion Claim during direct appeal. (ECF No. 10-7 at 94.) Relying on New Jersey Rule of Court 3:18-1[5] and N.J. Stat. Ann. § 2C:13-1(b),[6] the Appellate Division rejected the claim. (*Id.* at 64-65.) The court also relied on New Jersey cases that have held that "to support convictions for both kidnapping and another crime, the confinement must be more than merely incidental to the underlying crime." (*Id.* (internal citations omitted).) Applying this governing law, the Appellate Division was "satisfied that the evidence was sufficient to sustain the kidnapping charges" against Petitioner because "[c]onfinement is more than incidental if it results in an enhanced risk of harm." (*Ibid.*) Those were the circumstances as to the kidnappings here.

---

[5] "At the close of the State's case or after the evidence of all parties has been closed, the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction." New Jersey Rule of Court 3:18-1.

[6] "A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes: (1) To facilitate commission of any crime or flight thereafter; (2) To inflict bodily injury on or to terrorize the victim or another ..." N.J. Stat. Ann. § 2C:13-1(b).

34

This Court determines that habeas relief is not warranted on the Acquittal Motion Claim.

*Applicable Law*: Federal courts do not sit to retry state cases de novo, but rather to review for violation of federal constitutional standards. *Milton v. Wainwright,* 407 U.S. 371, ~~377 (1972). In *Milton* the Supreme Court held that a habeas court~~ cannot close its eyes to the reality of overwhelming evidence of guilt fairly established in the trial court. *Id.* at 377. Similarly, this Court cannot close its eyes to the evidence, as found by the state courts, of a prima facie kidnapping case against Petitioner at the close of the State's case.

In reviewing claims that trial evidence was insufficient for a conviction, habeas courts ask whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). This standard gives due regard to the factfinder's ability to view the evidence, resolve conflicts in it, and draw reasonable inferences from it. *Ibid.* The reviewing court does not re-weigh the evidence or re-determine the credibility of witnesses whose demeanor the factfinder has observed. *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). Determination of witness credibility is within the factfinder's sole province and is not subject to review. *Virgin Islands v.*

*Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995); *United States v. Pelullo*, 964 F.2d 193, 218 (3d Cir. 1992). The habeas court does not substitute its judgment for the factfinder's. *See, e.g., Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

New Jersey law is consistent with these principles as to review of acquittal motion rulings. *See, e.g., State v. Valdez*, No. A-2708-14T3, 2017 WL 3318303, at *3 (N.J. Super. Ct. App. Div. Aug. 4, 2017) (when considering a motion for judgment of acquittal, the trial court is to determine "whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable [factfinder] could find guilt of the charge beyond a reasonable doubt"); *State v. Samuels*, 914 A.2d 1250, 1254 (N.J. Jan. 31, 2007) (internal citations omitted). The court must view the evidence most favorably to the state, and ought not be concerned with the weight of the evidence. *See, e.g., State v. Reyes*, 236 A.2d 385, 388 (N.J. 1967) and *State v. Muniz,* 375 A.2d 1234, 1235-36 (N.J. Super. Ct. App. Div. 1977), *certif. denied,* 391 A.2d 488 (N.J. 1978)).

*The Acquittal Motion Claim Lacks Merit*: Ground Four lacks merit for at least the following three reasons.

First, Petitioner endeavors to challenge the state courts' acquittal rulings based on New Jersey kidnapping rules and its procedural Rules of Court. His claim presents a state law issue that does not warrant federal habeas relief. Habeas relief is only available if a state prisoner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). "[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 83 (1983). Here, Ground Four raises a matter of state law. The Acquittal Motion Claim does not raise a federal constitutional question. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Second, under the foregoing standard, Petitioner has not demonstrated a "wrong of constitutional dimension," *Wainwright*, 464 U.S. at 83, to warrant habeas intervention on Ground Four. To do so, he would have to show that, in violation of his due process rights, the record was completely devoid of evidentiary support for his kidnapping convictions. *See Cunningham v. Maroney,* 397 F.2d 724, 725 (3d Cir. 1968), *cert. denied,* 393 U.S. 1045 (1969). Here, the record demonstrates at least the following evidence of his guilt.

Co-defendants Sfand Rajabzaden, Juan DeJesus, Edwin Diaz, Michael Romero, Luis Manso, Jesus Rodriguez, and Petitioner left the June 29, 1998 Orange Crush meeting at Romero's home, in

vehicles with the intended victims. (ECF No. 10-7 at 10, 12-13, and 17.) Co-defendants "understood that their orders were to kill" Omar D. and Cabrera at Branch Brook Park to retaliate for the drive-by shooting at Romero's apartment complex. (*Id.* at 10-11 and 17.) Once at the Park, Manso ordered "Set it off," and a brawl ensued. (*Id.* at 15-16, 17.) During the attack, Petitioner grabbed Omar D. after Rodriguez let go of Omar D. Petitioner "held Morante down while Romero beat him with a belt." (ECF No. 10-7 at 16, 17.) When Omar D. continued resisting, various co-defendants dragged him towards a lake as he screamed. (*Ibid.*) Petitioner and Romero tried to drown Omar D. When he stopped moving, Petitioner dragged him further into the lake and held him underwater. (*Id.* at 17.) State witness Luis Rodriguez testified that Petitioner and Romero appeared to be trying to drown Omar D., and when he stopped moving, Petitioner dragged the body further into the water. (*Id.* at 16.) Omar D. and Cabrera were strangled to death and left lying face down in the water. (*Id.* at 9.)

Factual issues determined by a state court (jurors included) are presumed correct, and petitioners bear the burden of rebutting this presumption by clear and convincing evidence. *See Werts,* 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). In the face of the above-described record of guilt, Petitioner fails to offer the Court any evidence -- and, certainly, he

offers no clear and convincing evidence -- that any reasonable trier of fact would be unable to find him guilty of kidnapping. Having failed to do so, he demonstrates no "wrong of constitutional dimension," *Wainwright*, 464 U.S. at 83, to merit habeas intervention on the Acquittal Motion Claim.

Third, the Appellate Division's decision was not, in any event, either contrary to or an unreasonable application of relevant United States Supreme Court precedent. *See Jackson,* 443 U.S. 307. It was objectively reasonable for the state courts to find sufficient evidence to support kidnapping charges against Petitioner. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (quoting *Cavazos v. Smith*, 565 U.S. 1 (2011) (per curiam) (a federal habeas court may overturn a state court's rejection of a sufficiency of the evidence challenge only if that decision was "objectively unreasonable"'") (quoting *Renico*, 559 U.S. at 773). For purposes of conviction of both kidnapping and another crime under New Jersey law, taking a victim to a secluded location where assailants may more easily attack without being seen is sufficient to establish the creation of an enhanced risk of harm. (ECF No. 10-7 at 65-66 (citing *State v. Matarama*, 703 A.2d 278, 287 (N.J. Super. Ct. App. Div. 1977), *certif. denied*, 153 N.J. 50 (1998).) Co-defendants, including Petitioner, took Cabrera and Omar D. to a secluded section of Branch Brook Park. The attacks on them there were not likely to

be observed and their cries for help not likely to be heard, "thus greatly enhancing the risk to them." (*Id.* at 66 (the victims' "confinements enhanced the risk of harm by isolating them from their families, friends, and neighbors").)

Judge Lester, "viewing the State's evidence in its entirety ... and giving the State the benefit of all its favorable testimony, as well as all of the favorable inferences which reasonably could be drawn therefrom," could have determined that "a reasonable [factfinder] could find guilt of the charge[7] beyond a reasonable doubt." *See Valdez*, 2017 WL 3318303, at *3; *Samuels*, 914 A.2d at 1254; *Reyes*, 236 A.2d at 388; and *Muniz*, 375 A.2d at 1235-36. There is nothing in the record before this Court suggesting that Judge Lester, in following New Jersey law's well-established standard for acquittal motions, arrived at a result contrary to United States Supreme Court precedent. Similarly, the Appellate Division also could have reasonably determined that Judge Lester had before her sufficient evidence from which a factfinder could find Petitioner guilty of kidnapping beyond a reasonable doubt. He participated in the initial meeting where Byrd ordered the Orange Crush to kidnap the victims, break their arms, and kill them. (ECF No. 11-7 at

---

[7] As pertinent to Ground Four, Petitioner was indicted for kidnapping in violation of N.J. Stat. Ann. § 2C:13-1(b) in indictment counts: two (Omar D.); seven (Cabrera); twelve (Omar W.); and sixteen (Cortes)). (ECF No. 10-1 at 5, 10, 15, and 19.)

23-25.) He was present at Romero's house when the victims were brought there, and he was responsible for keeping them at the house. (ECF No. 11-6 at 15-16.) Co-defendants then took the victims deep into a far section of the Park, out of view of onlookers. (ECF No. 11-11 at 22-24.) Romero, Diaz, Rodriguez, and Petitioner then "beat down the victims." (*Id.* at 24.)

For all of these reasons, the Court will deny habeas relief on Ground Four.

## E. Ground Five: Conviction And Sentence For Felony Murder

Ground Five seeks to vacate and dismiss Petitioner's conviction and sentence for felony murder. (ECF No. 1 at 10-11 ("Felony Murder Claim").) In support, Petitioner argues that his felony murder charge was based on the kidnapping of Cabrera, but Cabrera "was not actually killed by [Petitioner]." (*Ibid.*)

*Trial*: Pertinent to Ground Five, Petitioner was convicted of: first degree kidnapping of Omar D. (count two); first-degree kidnapping of Cabrera (count seven); first-degree kidnapping of Omar W. (count twelve); first degree felony murder of Omar D. (count five); and first degree felony murder of Cabrera (count ten). (ECF No. 10-2.)

He received two concurrent thirty-year sentences for kidnapping (counts two and twelve), eighty-five percent without parole. His remaining convictions merged. (ECF No. 10-3.)

*Direct appeal*: The Appellate Division found "no basis" to the Felony Murder Claim. (ECF No. 10-7 at 96.) The court agreed with the State that Petitioner's felony murder conviction should be reversed only if the kidnapping convictions for both Cabrera and Morante were reversed. (*Id.* at 97.) The evidence supported kidnapping, so the felony murder conviction could stand. Furthermore, it determined that a New Jersey jury need not designate which felony theory it relies on as to felony murder "if the evidence supports alternative felony theories." (*Id.* at 96 (internal citations omitted).) The court noted that the evidence in Petitioner's case "could support the theory that Cabrera was killed while [Petitioner] was engaged in ... kidnapping Morante." (ECF No. 10-7 at 97.) Thus, the Appellate Division affirmed the felony murder conviction.

*The Felony Murder Claim Fails On The Merits*: The Felony Murder Claim does not meet the requirements of 28 U.S.C. § 2254 for habeas relief for at least the following three reasons.

First, the Felony Murder Claim concerns state law. Thus, Ground Five is not cognizable in federal habeas. *See Estelle,* 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Smith,* 120 F.3d at 414 ("[A] state court's misapplication of its own law does not generally raise a constitutional claim") (citations and internal quotation marks

omitted); *Johnson v. Rosemeyer,* 117 F.3d 104, 110 (3d Cir. 1997) ("[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."). "[A] mere error of state law is not a denial of due process." *Swarthout v. Cooke,* 562 U.S. 216, 222 (2011).

Second, Petitioner has not shown that the state courts' adjudication of the Felony Murder Claim was contrary to, or an unreasonable application of clearly established United States Supreme Court holdings. *See* 28 U.S.C. § 2254(d)(1)-(2). That Court has never proscribed a kidnapping charge from serving as a predicate offense to felony murder where, as here, the evidence supports a theory that the victim was killed while a defendant was engaged in kidnapping. There is no clearly established Supreme Court law, relating to Petitioner's Felony Murder Claim, with which the state courts' rulings could have been at odds.

Third, the Felony Murder Claim suffers from a fatally flawed premise. As noted *supra* regarding the Acquittal Motion Claim, the evidence at trial was sufficient to support the state court rulings on the kidnapping charge. *See Jackson,* 443 U.S. at 319. Petitioner has demonstrated no meritorious basis to vacate his kidnapping conviction. Thus, that conviction does not, despite his suggestion, serve to constitutionally taint his felony murder conviction. (ECF No. 1 at 11.) Accordingly, the premise of the Felony Murder Claim is flawed.

This Court will deny relief as to Ground Five.

## F. Ground Six: Felony Murder Jury Instruction

Ground Six argues that the felony murder jury instruction was erroneous and prejudicial. Petitioner claims "the court failed to charge the jury with respect to the affirmative defense set forth in [New Jersey's felony murder statute]." (ECF No. 1 at 11 ("Jury Instruction Claim").)

The statutory affirmative defense to felony murder in N.J. Stat. Ann. § 2C:11-3(a)(3) is also known as the "non-slayer" defense. This statute provides an affirmative defense to a homicidal act if the defendant was not the only participant in the underlying crime and the defendant:

> (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

> (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and

> (c) Had no reasonable ground to believe that any other participant was armed with such weapon, instrument, article or substance; and

> (d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

New Jersey Stat. Ann. § 2C:11-3(a)(3).

*Trial*: Judge Lester charged the jury on felony murder as follows:

> The State contends, while the defendants were engaged in the commission of the crime of kidnapping, ... they asphyxiated and killed Omar D. Morante and Jimmy Cabrera.
>
> This charge is based on a section of our statutes which reads as follows: Criminal homicide constitutes murder when it is committed when the actor is engaged in the commission of kidnapping, and in the course of such crime causes the death of a person other than one of the participants. Generally, it does not matter that the act that causes death was intentional or accidental. The perpetrator is as guilty of felony murder as if he had purposely or intentionally caused the murder, the act of death.
>
> The elements of the crime of felony murder that the State must prove beyond a reasonable doubt are as follows:
>
> First, the State must prove beyond a reasonable doubt on or about the date in question a defendant was engaged in the commission of the crime of kidnapping ...; secondly, the State must prove the death of either victim was caused by the defendant; and third, that the death of either victim was caused at some time within the course of the commission of kidnapping ...

(ECF No. 11-21 at 56-57, 70-72.) Judge Lester explained at length each element of these burdens of proof. (*Ibid.*)

*Direct appeal*: Petitioner's Jury Instruction Claim on direct appeal argued entitlement to a Non-Slayer Defense jury instruction because Edwin Diaz, not Petitioner, actually killed

45

Cabrera. (ECF No. 10-7 at 93, 97.) Relying on § 2C:11-3(a)(3)'s factors, the Appellate Division rejected his argument. (*Id.* at 97-98.) Contrary to his contention, "there was ample evidence that [he] knew that the other participants 'intended to engage in conduct likely to result in death or serious physical injury to Cabrera. He was present at all planning stages and at the scene of the crimes, and was unable to participate in Cabrera's killing only because he was in the process of killing Morante." (*Ibid.*) Citing New Jersey case law, the Appellate Division stated that a Non-Slayer Defense jury charge is proper "if and only if there is some evidence supporting it." (*Id.* at 84 and 98.) That was not the case as to Petitioner. (*Id.* at 97-98.)

*The Jury Instruction Claim Fails On The Merits*: Petitioner is not entitled to habeas relief on the Jury Instruction Claim for at least the following two reasons.

First, Ground Six is not a federal claim subject to habeas review. "Questions relating to jury charges are normally matters of state law and not cognizable in federal habeas review. [T]he district court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Hill v. Johnson*, No. 15—6835, 2018 WL 6649724, at *11 (D.N.J. Dec. 19, 2018) (citing *Engle*, 456 U.S. 107;

*Henderson*, 431 U.S. 145; *Zettlemoyer*, 923 F.2d at 309; *Porter v. Brown*, No. 04-4415, 2006 WL 2640624, at *8 (D.N.J. Sept. 12, 2006); *Grecco*, 661 F. Supp. at 412. A state trial court's refusal to give a requested jury instruction does not, by itself, create a federal habeas claim. Instead, a habeas petitioner must establish that the instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (citation and quotation marks omitted). The error must have resulted in "actual prejudice." *Id.* at 637 (citation omitted).

Petitioner has not demonstrated any defect with the felony murder jury instruction. He merely disagrees with Judge Lester's election not to provide the Non-Slayer Defense. The record undermines his criticism. The Appellate Division found that he was not entitled to that defense under New Jersey law in the first instance. The facts before the jury negated the statute's fourth element -- *i.e.*, that Petitioner have no reasonable basis to believe that another assault participant intended to engage in conduct likely to result in death or serious physical injury. (ECF No. 10-7 at 85 (the Non-Slayer Defense's four elements "are conjunctive, so all four must apply" in order for a defendant to be entitled to the defense).) The evidence did not support the statutory criteria for invocation of the Non-Slayer Defense.

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005). This Court must defer to the state courts' interpretation of New Jersey law.

~~Second, the Jury Instruction Claim does not meet the habeas~~ standard of review. The state court's rejection of that claim is not contrary to, or an unreasonable application of clearly established United States Supreme Court holdings. *See Estelle,* 502 U.S. at 71-72; *Johnson,* 117 F.3d at 110. The Court finds *Delbridge v. Moore*, No. 03-2793, 2005 WL 3008805 (D.N.J. Nov. 9, 2005) instructive on this point.

The *Delbridge* Court rejected a § 2254 petitioner's challenge to the trial judge's failure to charge a felony murder affirmative defense. The habeas court did so because that defense is a creation of New Jersey law. "Taken as a whole," the challenged jury instruction "adequately explained the jury's role" in evaluating the evidence. 2005 WL 3008805, at *6. The instructions "were neither ambiguous or misleading," and they "clearly explained that the jury was to determine whether the [pertinent evidence] was reliable." *Ibid. See Henderson*, 431 U.S. at 155 ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law"). Judge Lester's felony murder charge in the instant case was similarly

robust in scope. Similar to the *Delbridge* court, this Court cannot find that the felony murder charge was faulty or infringed upon Petitioner's due process rights. Petitioner does not point to any United States Supreme Court precedent that required Judge Lester to include a Non-Slayer Defense jury charge under circumstances analogous to Petitioner's here. Thus, the Appellate Division's ruling was not contrary to or an unreasonable application of clearly established federal law.

This Court will deny habeas relief on Ground Six.

## G. **Ground Seven: Consecutive Sentences For Murder And Felony Murder**

Ground Seven argues that the trial court abused its discretion when it imposed consecutive sentences for murder and felony murder. (ECF No. 1 at 11 ("Consecutive Sentence Claim".) Petitioner argues that Judge Lester based Petitioner's sentence "solely upon the multiple deaths of two people. [The court] did not consider that the defendant did not actually kill one of the victims." (*Id.* at 12.)

*Direct Appeal*: Reviewing the Concurrent Sentence Claim on state law grounds, the Appellate Division rejected it because sentencing considerations weighed in favor of consecutive sentences. For example, "the crimes involved separate acts of violence" and "the crimes involved multiple victims." (ECF No. 10-7 at 41, 93, 98 (citing *State v. Yarbough*, 498 A.2d 1239

49

(N.J. 1985), *cert. denied*, 475 U.S. 1014 (1986).)[8] Where separate acts of violence involved multiple victims, "[c]onsecutive sentences are ordinarily imposed." (*Ibid.* (internal citations omitted).)

*Ground Seven Fails On The Merits*: The Consecutive Sentence Claim does not merit habeas relief for at least two reasons.

First, Ground Seven alleges a violation of state sentencing law in imposition of consecutive sentences. The Appellate Division analyzed Petitioner's claim pursuant to state sentencing law. (ECF No. 10-7 at 41, 93, 98.) This Court cannot reexamine state court determinations of state law. *Estelle*, 502 U.S. at 67-68; *Donnelly,* 416 U.S. at 642. Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review. *Logmans v. Moore*, No. 02-5622, 2005 WL 1106336, at *19 (D.N.J. Apr. 29, 2005) (citing *Johnson v. Beto,* 383 F.2d 197, 198 (5th Cir. 1967), *cert. denied,* 393 U.S. 868 (1968); *U.S. ex rel. Jackson v. Meyers*, 374 F.2d 707, 711 (3d Cir. 1967).) A habeas

---

[8] In *State v. Yarbough*, 498 A.2d 1239 (N.J. 1985), *cert. denied*, 475 U.S. 1014 (1986), the New Jersey Supreme Court set forth the factors to be considered when deciding whether to impose consecutive or concurrent sentences. The *Yarbough* factors essentially focus upon "the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims." *State v. Carey*, 775 A.2d 495 (N.J. 2001) (quoting *State v. Baylass*, 553 A.2d 326 (N.J. 1989)).

court will not re-evaluate a sentence unless it exceeds the statutory limits or was arbitrary and capricious as to constitute a due process or Eighth Amendment violation. *Logmans*, 2005 WL 1106336, at *19 (citing *Jones v. Superintendent of Rahway State Prison,* 725 F.2d 40 (3d Cir. 1984)); *Richmond v. Lewis,* 506 U.S. 40, 50 (1992); *Jackson v. Bever,* 750 F. Supp. 153, 156-57 (D.N.J. 1990). Nothing in the record suggests that is the case here.

Second, Ground Seven alleges no separate federal constitutional claim. A federal court may review a state sentence only where the challenge is based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco,* 661 F. Supp. at 415; *Velez v. Lagana*, No. 12-0430, 2015 WL 2344674 at *12 (D.N.J. May 14, 2015) (internal citations omitted). *See also Pringle v. Court of Common Pleas,* 744 F.2d 297, 300 (3d Cir. 1984). "[A] person is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual ... and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." *Chapman v. United States,* 500 U.S. 453, 465 (1991) (citations omitted); *Gryger v. Burke,* 334 U.S. 728, 731 (1948); *Jones v. Superintendent of Rahway State Prison,* 725

F.2d 40, 42–43 (3d Cir. 1984). Judge Lester sentenced Petitioner
under the governing statutes' ranges; she also considered both
the aggravating and the mitigating factors. (ECF No. 11-26 at 7-
12; ECF No. 10-3.) Judge Lester found: "slow death and death by
personal hands [that was] cruel;" the death of one sibling in
the presence of another; and remarkable "degree of strength
utilized against [Morante] while he fought very hard for his
life") (other internal citations omitted). (*See* ECF No. 11-26 at
9-10; ECF No. 10-7 at 94 and 99-101; ECF No. 10-10 at 14-15.)

Petitioner fails to demonstrate, much less even allege, that
Judge Lester's decision to impose consecutive terms for murder and
felony murder was arbitrary and capricious in violation of his
federal constitutional rights. His sentence was within New Jersey
law's ranges for the crimes of which he was convicted.[9] Under that

---

[9] *See* N.J. Stat. Ann. §§ 2C:13-2 (conspiracy to commit
kidnapping) (count one); 2C:13-1B (kidnapping) (count two);
2C:5-2 and 2C:11-3 (conspiracy to commit murder) (count three);
2C:11-3a(1) (murder) (count four); 2C:11-3a(3) (felony murder)
(count five); 2C:5-2 and 2C:11-13-1 (conspiracy to commit
kidnapping) (count six); 2C:13-1b(1) (kidnapping) (count seven);
2C:5-2 and 2C:11-3 (conspiracy to commit murder) (count eight);
2C:11-3a(3) (felony murder) (count ten); 2C:5-2 and 2C:13-1
(conspiracy to commit kidnapping) (count eleven); 2C:13-1b(1)
(kidnapping) (count twelve); 2C:5-2 and 2C:11-3 (conspiracy to
commit kidnapping) (count thirteen); 2C5-2 and 2C:13-1
(conspiracy to commit kidnapping) (count fifteen); 2C:13-1b(1)
(criminal restraint) (count sixteen); and 2C:5-2 and 2C:11-3
(conspiracy to commit murder); N.J. Stat. Ann. § 2C:43-6
(ordinary and mandatory terms for sentences of imprisonment);
ECF No. 10-3.

52

governing state law, his sentence "is not grossly disproportionate to the crime he committed." *See Jenkins*, 2014 WL 2602177, at *21. For these reasons, Ground Seven is denied.

## H. Ground Eight: Excessive Sentence

Ground Eight argues that Petitioner's sentence was excessive "because of the disparity between the [Petitioner]'s sentence and co-defendant[s]." (ECF No. 1 at 12 ("Excessive Sentence Claim").) He compares his consecutive forty-year prison sentences for Omar D.'s murder and Cabrera's felony murder to: (1) Luis Manso's consecutive thirty-year sentence for these crimes; and (2) Edwin Diaz's twenty-year maximum exposure under his plea agreement. (*Ibid.*) Petitioner argues that "both [Petitioner] and Manso actively participated in the murders of Omar D. Morante and Jimmy Cabrera." (*Ibid.*) Petitioner does not specifically allege any particular constitutional violation from the purportedly excessive and disparate sentence. (*Ibid.*)

*Direct appeal*: Relying on state case law, the Appellate Division rejected the Excessive Sentence Claim, explaining:

> The disparity between [Petitioner] and Diaz was well-supported because Diaz entered into a plea agreement and cooperated with the State ... It is proper to take such cooperation into account when sentencing ...
>
> [Furthermore,] the trial judge believed that the evidence against [Petitioner] was overwhelming, and that the jury 'gave Mr. Perez a bit of a break' by not finding accomplice liability for the death of

Cabrera. [Judge Lester] expressly ... noted
significant differences [between Petitioner
and Manso] ... '[Petitioner's] actual
conduct led to the death of [a victim] ...
[T]he mindset of a person who's willing to
do whatever he's told for no other reason
than loyalty to an organization is a
dangerous mind ... [There was] strength and
brutality to murder someone with your own
hands in this fashion. [T]his is a murder of
his own hands ... It was not a fast death.
It was a slow death' ...

[J]udge [Lester] thus found [Petitioner]
more culpable than Manso because he was
personally responsible for the death of
Morante, and the killing was particularly
brutal ...

(ECF No. 10-7 at 94 and 99-101; ECF No. 10-10 at 14-15).

The Appellate Division also found that the "[sentence]
disparity [between Petitioner and Manso] is not significant when
the proper parole ineligibility terms for both defendants are
considered." (*Id.* at 98.)

*Ground Eight Fails On The Merits*: The Excessive Sentence
Claim fails on the merits for at least the following reasons.

First, the Excessive Sentence Claim "is not cognizable
because a challenge to a state court's discretion at sentencing
is not subject to review in a federal habeas proceeding. *See
Pringle,* 744 F.2d at 300). According to the Third Circuit,
'[t]he contention that gross disparity in sentences violates due
process or equal protection lacks merit.'" *D'Amico v. Balicki,*
No. 11-4168, 2012 WL 3925881, at *12 (D.N.J. Sept. 6, 2012)

54

("[Petitioner's] assertion that his sentence is unduly disproportionate to those given to his co-defendants presents only a 'possible error of state law'")(citing *Jones*, 725 F.2d at 43). Petitioner does not contend that his purportedly disparate sentence constitutes cruel and unusual punishment or that it is arbitrary or otherwise a due process. Petitioner also makes no contention that his sentence differed from Manso's because of discrimination based on race, sex, or similar grounds that would implicate the federal Constitution. Rather, Petitioner generally alleges his sentence is unfair in comparison to Manso's. *See id.*; ECF No. 1 at 14. Accordingly, Ground Eight is not reviewable in this habeas proceeding. *See Jenkins v. Bartkowski*, No. 10-4972, 2014 WL 2602177, at *21 (D.N.J. June 11, 2014).

Second, Ground Eight fails the habeas standard of review. Petitioner cites no United States Supreme Court case law holding that the mere fact of disparity in co-defendants' punishments -- as between one who pleads guilty (such as Edwin Diaz) and one who stands trial -- constitutes a due process violation. The Appellate Division's decision was not contrary to or an unreasonable application of Supreme Court precedent.

Third, Petitioner does not cite any examples of similarly-situated New Jersey defendants whom the Court might compare to Petitioner and find that Petitioner's sentence was excessively disparate. He has not even shown that, at the very least, he was

55

similarly situated to Manso. *See United States v. Armstrong,* 517 U.S. 456, 464-65 (1996). "[A] '[d]isparity of sentence between co-defendants does not, of itself, show an abuse of discretion.'" *United States v. Bonfilio,* 611 F. App'x 758, 760 (3d Cir. 2015) (internal citations omitted). Petitioner makes no showing of discretionary abuse here.

For these reasons, the Court denies relief on Ground Eight.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003).

Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## VI.  CONCLUSION

For all of the foregoing reasons, the Petition is denied with prejudice on the merits and no certificate of appealability shall issue. An appropriate Order follows.

Dated: Aug 20, 2019

_____
Madeline Cox Arleo
United States District Judge